## J. C. HEMINGRAY v. JARED TODD, *et al.*

### *Error from Leavenworth County.*

*Decided February 20th,* 1865.

1. HUSBAND AND WIFE.—Prior to February 11, 1858, the money of a married woman upon being reduced to possession by her husband became his money, and property purchased with it was, as to third persons, his property.

2. ID: AGENCY.—When the husband with the consent of his wife, obtained the actual possession and custody of her money, and with the like assent loaned it, taking therefor in his own name a promissory note, secured by mortgage on real estate which was not transferred or assigned to the wife in an action to charge land purchased with such money, the conveyance of which was taken in the name of the wife, she will not be permitted to show a secret understanding between herself and husband, that he in the whole transaction acted as her agent.

The facts of the case are substantially as follows:

In A. D. 1861 and 1862 Hemingray obtained judgments against Jared Todd, and sought by an action against him, Martha his wife, and others, to reach his interest in a certain piece of land, the history of the title to and of the purchase money for which, so far as it bears upon this case, is as follows:

Jared Todd, in the State of Missouri, intermarried with Martha, the widow of one H.; that her father E. was administrator of the estate of H., and at the request of Martha, E. previous to February 11th, 1858, and after the marriage, paid over to Jared Todd certain moneys belonging to Martha, proceeds of said estate; that Jared loaned this money to S., taking security upon the premises in question, payable to himself; that Jared afterwards, on March 29th, 1860, procured a conveyance of the premises, to be made in satisfaction of that security which was a part of the consideration, and which was thereupon canceled, to

his wife Martha, who executed her separate note to S. for the balance of the consideration for the deed of conveyance to her.    The case was submitted to a jury.

To bring the facts out still more clearly the following are among the instructions asked by the plaintiff, and refused by the court below, viz:

"If the money of Mrs. Todd, alleged to have been his, was owned by her prior to the 11th day of February, A. D. 1858, and Mr. Jared Todd had come into the possession thereof, such money was the money of her husband, and any property purchased with such money is in law the property of her husband."

"If the defendant, Martha Todd, allowed Jared Todd to take the money to deal with it as his own, and he in so doing loaned it to Stewart taking a note therefor, payable only to himself, and no transfer of the note was made to Mrs. Todd, the note was the absolute property of Jared Todd; and if the property in question was purchased by Mrs. Todd of Stewart, and the consideration in whole or in part was said note, then such property, to the extent of said note, was the property of Jared Todd and liable for the payment of his debts."

The defendant, Jared Todd, claimed that there was an understanding that he acted in the whole transaction as agent of his wife.

A verdict and judgment for defendants below.    A new trial overruled.    Exceptions were saved to the rulings, refusing to give the instructions asked, and refusing to grant a new trial.

*Hemingray & Gambell*, for plaintiff in error.

*Lewis Burns, and others*, for defendants in error.

*For plaintiff*, it was maintained:

1.  At the time of the marriage of Jared Todd with Martha, all her personal estate became the property, abso-

lutely, of her husband, and particularly when that property was reduced to possession by the husband during coverture. *Enlaws Ex'rs v. Enlaws,* 3 *Marsh.,* 229; *Fightmaster v. Beasley,* 7 *J. J. Marsh.,* 411; *Lewis v. Night,* 3 *Littell,* 225; *Hawkins Adm'r v. Craig et Ux.,* 6 *Ben. Mon.,* 257; *Wilkinson v. Perrie,* 7 *id.,* 216; *Porters' Ex'rs v. Silver Adm'r, etc.,* 5 *J. J. Marsh.,* 36; *Scott, etc., v. Hughes,* 9 *Ben. Mon.,* 110; *Sheriff of Fayette v. Buckner,* 1 *Littell,* 127; *Ewings' Heirs, etc., v. Handley's Ex'rs,* 4 *id.,* 349; *South's Heirs v. Hoy's Heirs,* 3 *Ben. Mon.,* 93; *Churchills' Heirs v. Aikins Adm's,* 5 *Dana,* 476; *Basham v. Chamberlain,* 7 *Ben. Mon.,* 445; *Garret v. Gault,* 13 *id.,* 380; *Walker v. Walker,* 25 *Mo.,* 364; *Houck v. Camplin, id.,* 378; 15 *Barb.,* 446; 4 *Barb.,* 295.

2. The husband being involved cannot, while so involved, make a gift to his wife or any provision for her, in fraud of creditors. *Acts* 1857–58, *Kas. L., Ch.* 40., § 1; *Walker v. Walker,* 25 *Mo.,* 367.

3. In this case the conveyance to the wife of the debtor of the land in question could be attacked. *Carpenter v Rose,* 10 *N. Y.,* 227.

*For defendant in error,* the following points were made:

1. The instructions asked were erroneous. To make the money received from the H. estate the property of Jared Todd, it should appear that he reduced it to possession as his own, for himself only. To instruct the jury that the mere naked coming into possession of the money would make it his, would have been error.

Although in the case stated in the instructions Jared Todd might be the absolute owner of the note, yet when the purchase was made by Mrs. Todd from Stewart there was no legal objection to Jared Todd's giving his wife the note to pay for the land and not to defraud creditors, as was his right; and the land, being conveyed to Mrs. Todd, was not subject to the payment of the debts of Todd.

The evidence shows Hemingray's claim to have arisen

long subsequently to the conveyance to the wife of the interest in and consideration for the deed; hence he could not inquire into that fact even if, without controversy, Jared Todd's own money had bought the land. 1 *Am. Lead. Cas.*, 49, 83, *and cases there cited*; *Bennett v. Bedford Bank*, 11 *Mass.*, 421; 8 *N. H.*, 41, 50; 8 *Conn.*, 186; 1 *Bailey's Eq.*, 142.

*By the Court*, BAILEY, J.

　　The judgment below reversed.

---

ROBERT C. LOWRY v. ANDREW STEWART, *et al.*

*Error from Leavenworth County.*

*Decided February 5th, 1866.*

1. CONTRACT: SALE.—An offer to sell and an agreement to purchase, at a stipulated price unaccompanied by any delivery, actual or constructive, or the payment of any kind, will not constitute a sale.

2. ID: PARTIES TO.—Where L., acting as the agent of S., had in his possession 778 sacks of flour, which he was authorized to sell for not less than $8 per sack, agreed to sell it for $6 to C., and before anything was paid or any delivery of the flour taken place, S., knowing the agreement; took the money from C. and delivered to him 700 sacks of the flour, in legal contemplation the sale was made by S. and not L.

3. ID: DAMAGES.—Where, in such a case, a sale has been consummated by L., the rule of damages in a suit by S. against L. would be the value of the flour at the time and place of the sale.

4. EVIDENCE: VALUE.—In such an action the price to which the agent is limited by his principal is *prima facie* evidence of the value.

5. TRIAL: SPECIAL FINDINGS.—Where, under section 291 of the code, the court is requested by the defendant to make special findings of fact, such findings must be sufficient to warrant the judgment.

6. ID: FINDINGS OF FACT.—In the case above indicated, a finding of the value of the flour was necessary. A finding of the fact, which would be *prima facie* evidence of the value, is not a finding of the value. There might be rebutting evidence.